In the Matter of the Petition of William B. Astor to Vacate an Assessment for Paving Fourteenth Street, etc.

A newspaper, appointed by the common council of the city of New York as an official paper prior to the passage of the amended charter of 1857 (chapter 446, Laws of 1857), in the absence of any subsequent action of that body, continued in that position, and the presumption is, in the absence of proof of such action, that it did so continue.

The provisions of the acts known as the tax levies for the city of New York for the years 1863 (chapter 227, Laws of 1863), 1867 (chapter 586, Laws of 1867) and 1868 (chapter 853, Laws of 1868), limiting the number of official papers to be employed, and selecting the officers of the corporation to designate them, fall within the general subject indicated by the title to those acts, that is, the raising of money for the support and government of that city and regulating the expenditure thereof, as their effect is to limit the expenditure; they are, therefore, not repugnant to the sixteenth section of article 3 of the Constitution, providing that no local or private bill shall embrace more than one subject, and that shall be expressed in the title.

These provisions being general in their nature, and not being restricted in their operations by the terms of the acts, remained in force until changed by the legislature.

Under the act of 1868 the New York Leader was selected as an official newspaper. There was no change made in 1869 either in the power to appoint or the appointment. A resolution and ordinance was adopted by the common council in 1869 for the paving of a portion of Fourteenth street with Nicolson pavement. This was not published in the Leader. *Held*, that the appointment of that paper, as an official newspaper, continued; and the proceedings not having been published as required by section 7 of the amended charter of 1857 (chapter 446, Laws of 1857), the assessment for the purposes of the work was void.

(Argued November 19, 1872; decided December 3, 1872.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, affirming an order of Special Term vacating an assessment for paving Fourteenth street in the city of New York, between Eighth and Ninth avenues, with Nicolson pavement.

The resolution authorizing the work was introduced in the board of aldermen September 6th, 1869, it was adopted by

that board September 27th, 1869, and by the board of assistant aldermen October 4th, 1869, and approved by the mayor October 11th, 1869.

The New York Leader was appointed as one of the corporation papers by the common council in January, 1857. It was also designated as an official paper by the mayor and comptroller July 2d, 1863, by the comptroller July 1st, 1867, and by the mayor and comptroller December 3d, 1868. The resolution and ordinance authorizing the improvement were not published in the Leader.

*John H. Strahan* and *Richard O'Gorman* for the city of New York, appellant. The provisions of the tax levy acts for 1863, 1867 and 1868 are unconstitutional. (*The People v. Hill*, 3 N. Y., 449; *The People v. O'Brien*, 38 id., 193; *Gaskin v. Meeks*, 42 id., 186; *Huber v. The People*, decided in Court of Appeals, March 27th, 1872.) The confirmation of the assessment by the board of revision and correction of assessment was valid. (Laws of 1861, ch. 308, § 1; Laws of 1872, ch. 580, § 6.)

*Charles E. Miller* for the respondent. The resolution and ordinance were not published as required by section 7 of the charter. (*Matter of Douglas*, 1 Sickels, 42.) The tax levy acts of 1863, 1867 and 1868 are constitutional. (*Sun Mut. Ins. Co. v. Mayor*, 2 Seld., 252, 253; *Matter of Douglas*, 1 Sickels, 42; *The People ex rel. Thomas A. Davis v. The Commissioners of Taxes of the City of New York*, 2 Sickels, 501, 504.) The assessment has never been confirmed by the common council and should be vacated. (Valentine's Laws, 1191.) The act of 1861 is a local bill and violates the Constitution. (Valentine's Laws, 1190; Laws 1859, chap. 302, § 15; *Town of Fishkill v. Plank-road Co.*, 22 Barb., 634; *People v. Hill*, 35 N. Y., 449; *Baldwin v. Mayor*, 2 Keyes, 387, 392; *People v. O'Brien*, 38 N. Y., 193; *Smith v. Mayor*, 7 Robertson, 190; *Pullman v. Mayor*, 54 Barb., 169; *Gaskin v. Meeks*, 42 N. Y., 186; *People v. Commissioners of High-*

*ways of Town of Palatine*, 53 Barb., 70; *People* v. *Allen*, 3 Hand, 404–417; *People ex rel. Lee* v. *Board of Supervisors of Chautauqua County*, 4 id., 10.)

Church, Ch. J. This is an appeal from an order of the General Term of the first department, affirming an order vacating an assessment against the petitioner for paving a portion of Fourteenth street. The principal point argued was as to the sufficiency of the publication of the action of the common council authorizing the improvement.

The seventh section of the amended charter of 1857 (chap. 446, Laws of 1857) provides, that "All resolutions and reports of committees which shall recommend any specific improvement involving the appropriation of money, or the taxing or assessing the citizens of the city, shall be published immediately after the adjournment of the board, under the authority of the board, in all the newspapers employed by the corporation, and shall not be passed until after notice has been published at least two days."

We held *In re Douglas* (46 N. Y., 42) that the provisions of this act requiring publication operated as a limitation upon the power of the common council to make assessments upon the citizens of the city, and that a failure to comply with the act in this respect rendered assessments void. The improvement in question was in 1869, under the provisions of this act. The proceedings were not published in the New York Leader; and the question is whether that paper was, at the time they took place, a newspaper "employed by the corporation." If it was, the assessment was void within the principle of the case *In re Douglas* (*supra*). There have been a variety of ordinances and acts of the legislature in relation to the designation and employment of newspapers for the publication of official notices in the city of New York, some of which it will be proper to refer to. At the time of the passage of the act of 1857 the Leader was employed, under an ordinance passed prior to the act authorizing the common council to designate seven newspapers to publish official

notices.   The counsel for the appellant claims that this appointment was limited to the year 1857, and was abrogated by the amended charter of 1857.   Although not very material, in the view I take of the subsequent acts, I am unable to appreciate the force of this objection.   In the absence of any other mode of designation or employment, the common council possessed this power, and it was expressly conferred upon them by the act of 1857.   The Leader being then an official paper, appointed by the common council, in the absence of any action of that body subsequently, would continue in that position, and, the presumption is, it did continue; and there is nothing in the act of 1857 inconsistent with its continuance.   By chapter 227 of the Laws of 1863, commonly known as the tax levy of that year, it was provided that no portion of the sums thereafter raised by tax or assessment should be paid for official advertising, except in newspapers authorized by the mayor and comptroller, who were directed to designate, not to exceed, ten in all.   In a similar act (chap. 586 of the Laws of 1867) the comptroller was directed to select three daily and three weekly newspapers, and the corporation was declared not to be liable for publication of official notices in any other papers.

In a similar act (chap. 853 of the Laws of 1868) it was provided that no payment for advertising official notices should be made, except to the newspapers designated by the mayor and comptroller, who were authorized to select a limited number wherein the proceedings of the common council were directed to be published.   The Leader was duly selected as one of the papers to publish official notices under the acts of 1863, 1867 and 1868.   In 1869 the tax levy contained no provision on the subject.

It is objected, first, that these acts violated the sixteenth section of the third article of the Constitution, which provides, that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."   The title of the act of 1868 is "An act to make provision for the government of the city

of New York." The act of 1867 is a little more full, and expressly embraced in its title the expenditure as well as the raising of money; but, substantially, these acts, as well as that of 1863, are the same. The general subject indicated is the raising of means for the support of the government of New York, and regulating the expenditure thereof, and any provision which fairly falls within this general subject might be incorporated in the act; and the provisions in question are clearly of that character. They relate to the expenditure of the money authorized to be raised, and, in effect, limit such expenditure. Instead of an unlimited power to employ all the newspapers in the city, and thus create obligations to pay therefor, these acts restricted the number which might be employed, and selected the officers of the corporation to designate them. The transfer of power of designation from the common council to specific officers of the corporation is not a different and independent subject, but immediately connected with the expenditure of the money authorized to be raised. We may presume that the change was regarded as a check upon expenditure, and that the mayor and comptroller, or the latter alone, would discharge the duty more for the pecuniary interest of the city than the common council. It is sufficient that it is connected with the support of the government and the expenses incident thereto.

We have not hesitated to condemn acts in conflict with this provision of the Constitution; but in every case we have found such a substantial departure from the subject of the title as to bring it within the evils intended to be guarded against. It is not required that the details of an act should be incorporated in its title; and it is equally important not to construe the provision so as to embarrass legitimate legislation, as it is to give it full effect in cases where matters foreign to, and not indicated by the subject embraced in the title are inserted. It is also objected that the designation under these acts continued for the year only; and that the selection made in 1868 did not extend to 1869, when these proceedings were instituted. Assuming that the appropriations in these acts

are designed to pay the expenses for a single year only, yet provisions of a general nature connected with them are not limited in their effect to that period. State appropriations must be made every two years; and yet general provisions in such acts, applicable alike to all appropriations, continue in force until repealed. The general prohibition in the act of 1863 against paying sums raised by tax for advertising, except to newspapers selected by particular officers, and the modification of the mode of selection in the acts of 1867 and 1868, are not restricted in their operation by the terms of the acts, and remained in force until changed by the legislature. The selection made under the act of 1868 of the Leader as one of the official newspapers continued therefore through 1869, there having been no change either in the power to appoint or the appointment; and, collating the three acts with that of 1857, this would be so, although the particular appropriation in 1868 could not be applied for advertising after that year.

The power to select newspapers is unconditional, both in the acts of 1867 and 1868, and the official character of the newspapers selected is not limited by or dependent upon the particular fund appropriated by the act. That fund is applicable only to the payment to newspapers selected in a particular way; but the power to select is unqualified.

Lastly, it is objected that the designation of newspapers under the acts of 1863, 1867 and 1868 does not constitute an *employment by the corporation* within the meaning of the act of 1857 above quoted. This is not tenable. The designation or selection authorized by those acts is only another mode of employment from that prescribed by the act of 1857. By the latter, the common council, and by the former, specific officers were authorized to employ newspapers. "To employ" and "to select," or "to designate," as used in these acts, are synonymous.

Without considering the other questions, the order of the General Term, vacating the assessment, must be affirmed.

All concur.

Order affirmed.