# SUPREME COURT.

In the Matter of the Application of Henry James Anderson to Vacate an Assessment for Paving First avenue.

In order to obtain a vacation of an assessment for non-conformity with the law requiring publication of resolution or ordinance of the common council in certain newspapers, it must be shown that a certain paper in which the publication was not made was not only designated by competent authority, but that the paper so designated accepted such designation.

*First Department, General Term, October, 1874.*

Appeal by the Mayor, &c., of the city of New York, from an order made at special term, vacating certain assessments made upon the property of the petitioner.

*William Barnes*, for appellant.

*E. Ellery Anderson*, for respondent.

Daniels, *J.* — The assessment forming the subject of complaint was laid in 1874, for the expenses of paving First avenue, in the city of New York, from Thirty-sixth street, northerly, to Sixty-first street. The avenue had been previously paved from Thirty-fourth to Thirty-seventh street, and the petitioner's property assessed for the expenses of that improvement, and that assessment had been paid by him. For that reason, he claimed that the assessment made in 1874 was for a repavement, and that it should be so far vacated as it affected his property, because the resolution directing the

work to be done had not been published, as the law required it should be, for the period of two days previous to its adoption.

The resolution was presented to the board of aldermen of the city, on the 3d of December, 1868, and adopted by that board on the fifth, and presented to the board of councilmen on the seventh, and adopted on the tenth of that month ; and the mayor approved it on the twelfth. This resolution, in order to render it valid, was required to be published at least two days before it was finally passed or adopted, in all the newspapers employed by the corporation of the city of New York. The publication was in the nature of a condition, the performance of which was essential to the legal validity of the resolution. Until that was made, it could not be properly passed or adopted (*Laws of* 1857, 875, *sec.* 7).

It is not claimed in this case that the resolution providing for the pavement of the avenue was not published, for two days before it was adopted, in any of the papers employed by the corporation, but that its publication was omitted in one of them. This objection is special in its nature; and, from the manner in which it has been presented, it amounts to a virtual concession that in all the other papers it was regularly published; and that limits the examination required in the case to the simple disposition of that objection. If that shall not be found to be well taken, the petitioner's application must necessarily fail.

Before the year 1863 the employment of newspapers by the corporation was regulated by one of the ordinances of the city, but since that year it has been made the subject of express legislative enactment, and each of the acts of the years 1863, 1865, 1866, 1867 and 1868 required new designations to be made in compliance with their terms, in order to justify the city in compensating their proprietors for their services, and under these provisions it was shown that the designation of 1867 was, in express terms, limited to that year. That circumstance, as well. as the explicit provision made upon the

subject in 1868, required a new designation and employment in that year ( *Vol.* 2, *Laws of* 1868, 2008).

To supply that emergency, the acting mayor and the comptroller, to whom the duty and power of selection were confided, designated certain newspapers in which, according to the terms of the act of 1868, the proceedings of the common council, or either branch thereof, and the notices of its committees, should be published. This was done on the first day of December of that year, and but nine days before the resolution for the paving of First avenue was adopted by the board of councilmen.

It is claimed that the designation or selection of newspapers, for the special purposes mentioned, did not require the resolution adopted for making this improvement to be published in them, even though their proprietors accepted the employment thereby tendered them. But that position cannot be sustained, because the act of 1857, by force of its own provision on the subject, positively required the publication of the resolution on the mere circumstance of such employment. The obligation to publish the resolution in all the papers employed was distinctly created by that act, even though its performance was not provided for in the express terms of the employment. It was certainly within the substance of the employment, as long as it was a portion of the proceedings of the board of aldermen and councilmen. That included its publication, and when published, the act of 1857 required it to be continued for the period of two days at least.

But a mere selection or designation of newspapers, by the mayor and comptroller, did not, of itself, constitute an employment, and it was only in newspapers employed by the corporation that the act of 1857 required the resolution to be published. To constitute the employment contemplated, required something beyond a mere selection or designation by one of the parties to it. Some act, assent or acquiescence on the part of the proprietors of the newspapers selected, accepting the tendered service, was necessary for that purpose. Employ-

ment is the result of a contract, expressed or implied, for the performance of services by the person or persons employed; and, like all other contracts, it requires the concurring assent of both parties to create the obligation contemplated by the terms. A mere selection or designation of one person by another to perform services for the latter, is no employment. It is simply an offer of employment, which may be withdrawn at any time before it has been accepted. In the present case, until the proprietors of the newspapers acquiesced in their selection by the mayor and comptroller, there was nothing to prevent them from being changed, and a new selection being made in its place, by those officers.

The proceeding for paving First avenue is assailed as invalid, because the resolution directing it was not published in the Leader, which was one of the newspapers mentioned in the selection made by the mayor and comptroller; but the proof made was not sufficient to maintain the objection, because it was not shown that the proprietors of that paper had any information whatever of the fact of its selection, or that it had in any form become public, before the resolution was finally adopted by the board of councilmen. Nothing, therefore, appeared from which an acceptance of the employment indicated could, with any reason, be inferred. Indeed, such an inference would be altogether unsupported and unwarranted.

It did appear that the resolution was published for one day in the Leader, on the 12th of December, 1868, but at most that is evidence of an acceptance of the employment only from that time, and then the resolution was actually approved by the mayor. This circumstance in no way justified the conclusion that the employment had been in any form assented to before that time; and as it was not, the publication of the resolution in that journal was not required by the direction given in the act of 1857. What that law provided was, that it should be published in the newspapers employed by the corporation before the time of its final adoption, but the Leader was not shown to have been then actually employed. See

In the Matter of Anderson.

further upon this subject the opinions of DAVIS, P. J., in the cases of *Phillips* agt. *Burke*, decided during the present term. The decisions made in the cases of *Douglass* (46 *N. Y.*, 42), and *Astor* (50 *N. Y.*, 363), do not conflict with these views. Those controversies arose when the employment of the newspapers omitting the requisite publication was beyond controversy.

In the last of these cases, the objection was taken that the designation under the act of 1868 was not such an employment as the act of 1857 contemplated for the purpose of rendering the publication of the resolution necessary; but that was held untenable, and it well might be, for the designation, when acquiesced in or accepted, was sufficient to create an employment by the corporation, and the obligation to publish under the act of 1857 depended solely on the mere fact of employment. The resolution, in that instance, was adopted in September 1869, long after the acceptance by the Leader, of the designation made in 1868, actually took place.

Besides the reasons already given for a reversal of the order, the further circumstances appeared from the proofs made on behalf of the applicant that no pavement was previously made on First avenue beyond Thirty-seventh street for which his property had been assessed. That appeared to have been an original pavement, first made under this resolution; and as he was assessed and paid before only for paving the avenue to Thirty-seventh street, he should now be required to pay that part of the expenses which has been assessed upon his property for the pavement made upon the avenue beyond the point to which it was previously made; and that would appear to comprehend the assessment on the lots owned by him between Thirty-seventh and Thirty-eighth streets, including those upon the diagram from Nos. 4,516 to 4,525, both inclusive. They are all above Thirty-seventh street, and were probably assessed for the benefits deemed to be made to them by the pavement; and, for that, they were liable to assessment because that was not a repavement. As to that

portion of the assessment made, the Laws of 1872 and 1874 rendered the resolution valid, even though it was not published in the newspapers employed by the corporation at the time when it was adopted (*Vol.* 2, *Laws of* 1872, *sec.* 7; *Laws of* 1874, 364, *sec.* 7).

The order appealed from should be reversed, with ten dollars costs, besides the disbursements on the appeal, and an order entered denying the application, with ten dollars costs.